258 So.2d 257 (1971)
Eugene ROBERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 40303.
Supreme Court of Florida.
December 16, 1971.
Rehearing Denied March 10, 1972.
*258 Robert E. Jagger, Public Defender and Joseph F. McDermott, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Thomas B. Calhoun, Asst. Atty. Gen., for appellee.
PER CURIAM.
Appellant, hereinafter referred to as defendant, was convicted of murder in the first degree without recommendation of mercy in the death of Henry W. Collins and was sentenced to death. The testimony adduced at the trial established that on October 11, 1969, defendant's estranged wife was riding in the car with Collins when the defendant passed them, turned around and followed them. Collins drove to his brother's home and the defendant stopped nearby. When Collins got out of his car, the defendant went over and shot Collins in the head with a shotgun. Defendant had earlier made a statement in front of his daughter that he was planning to kill Collins. Shortly after the shooting, defendant was found leaving town with a shotgun in his car with one shell expended.
Defendant pleaded not guilty to the charge of murder in the first degree. His first trial resulted in a verdict of guilty with recommendation of mercy. A life sentence was imposed in accordance with the Statute.[1] Thereafter, defendant's motion for a new trial, based upon the failure to submit written instructions to the jury, was granted and the cause was set for retrial.
Defendant objected to being retried, claiming that it placed him in double jeopardy contrary to North Carolina v. Pearce.[2] The motion was denied and the cause proceeded to trial. The jury at the second trial returned a verdict of guilty but without recommendation of mercy. Prior to sentencing, defendant again raised the double jeopardy claim and added the further ground of a violation of due process under the Fifth and Fourteenth Amendments of the United States Constitution. His objections were overruled and he was given a death sentence.
On appeal to this Court defendant contends: (1) that the trial court committed reversible error by refusing to grant a mistrial on the grounds that reference was made, both in opening argument and on direct examination of the defendant's wife, to prior marital fights; (2) that the remarks of the prosecuting attorney constituted "comment on failure to testify"; and (3) that defendant's right to due process of law under the Fifth and Fourteenth Amendments, United States Constitution, were violated by his retrial upon a first degree murder charge subjecting him to a death penalty when he had previously received a recommendation of mercy and life sentence and both trials were before a jury.
Defendant's contention regarding point one, supra, is that evidence of prior fights between defendant and his wife had no relevance to the charge of murder of Henry Collins and should not have been admitted into evidence. Defendant asserts that the evidence was inadmissible because its sole purpose was to establish the character or propensity of the accused for violence. We disagree. Defendant's relationship with his estranged wife was very much involved with the shooting. Her fear of the defendant, resulting from their prior fights, caused her not to go with him as he had requested earlier on the evening of the shooting. This led to the chain of events which resulted in the death of Collins.
Defendant's second contention, supra, is based on the following statement *259 made by the prosecution in closing argument:
"I really hope not because it is only in this courtroom that a defendant, like Roberson, given all the rights that they are entitled to, that society on the other hand are given the same rights of the people who have to live together. We must abide by the rules. So must you, Eugene Roberson, abide by the rules. The rules say when you kill from an unlawful or premeditated design, the law fixes the penalty for that. You are to determine as you sit there now, as you examine this, I think the only question you have from the evidence is to ask yourselves wherein lies the recommendation? Wherein lies the excuse for you to interfere with the penalty of the law."
Defendant states that the use of the word "excuse" in the foregoing statement to the jury constitutes an indirect comment on his failure to testify. We are unable to find any merit in this contention. Nothing in the statement of counsel for the State constitutes a reference to defendant's failure to testify.
The third point raised by defendant in his appeal has merit. The imposition of the death sentence in this case conflicts with the principles announced in North Carolina v. Pearce.[3] The Pearce case holds that if a court pronounces a more harsh sentence upon a defendant in a second trial than the one imposed at a first trial, some reason to justify the harsher sentence must appear in the court record. Pearce does not prohibit imposition of a more severe sentence, even a death sentence, on second trial if the facts before the court warrant it. It takes no imagination to recognize that additional evidence produced at a second trial could dissolve the basis upon which a prior jury had recommended mercy.
Florida Statutes § 920.09, F.S.A.[4], which was effective at the time of the first and second trials in these proceedings, provides as follows:
"When a new trial is granted such new trial shall proceed in all respects as if no former trial had been had, but where an offense is divided into degrees and the defendant has been convicted of a lesser degree, he cannot thereafter be prosecuted for a higher degree of the same offense."
The relevant Rule of Criminal Procedure is 1.640(a), 33 F.S.A.:
"When a new trial is granted, the new trial shall proceed in all respects as if no former trial had been had except that when an offense is divided into degrees or the charge includes a lesser offense, and the defendant has been found guilty of a lesser degree or lesser included offense, he cannot thereafter be prosecuted for a higher degree of the same offense or for a higher offense than that of which he was convicted."
It is our duty here to reconcile the above Statute and Rule with the principles announced in the Pearce case.
It has been suggested that since the determination of mercy is made by two separate juries, the second jury could deny a mercy recommendation on the same facts as might have been used by the first jury to recommend mercy. It is urged that the second jury would have no reason to be arbitrary as the jurors would be strangers to the matter and thus without prejudice or resentment over the appellate directive for a new trial. That argument is without merit. The rule of North Carolina v. Pearce is not limited to new trials presided over by the same judge who originally sentenced defendant. The second judge could likewise be a stranger to the case and free of vindictiveness. In Stonom v. Wainwright[5] *260 a more severe sentence imposed on defendant by a second judge after retrial, was set aside by the District Court stating:[6]
"We find nothing in the record relating to the motivation of the second trial judge in imposing a more severe sentence upon defendant than that imposed at his initial conviction."
Men on death row have little concern over whether a judge or a jury put them there.
A careful study of the Pearce case leads to the conclusion that regardless of the personalities involved in the proceedings at trials, unless the record in the second trial shows that defendant has done a more severe act against society or that evidence is more persuasive against defendant, than in the first trial, the punishment cannot exceed that meted out at the first trial.
There is no way under Florida procedures whereby the second jury can make this determination. Therefore, because of the above federal guidelines and despite restrictions imposed by Florida Statutes § 919.23(2), F.S.A.[7] it is the duty of the trial court to evaluate the records of the first and second trials in all instances to assure that the severity of the sentence imposed at the second trial will not exceed the sentence of the first trial unless there are sufficient circumstances in the record to justify such increase in severity. If the first jury has recommended mercy on a given set of circumstances and the second jury fails to make such recommendation, the court shall impose the death sentence unless the record in the second trial fails to show a basis for increased severity. If no such basis exists, the same sentence as previously imposed must be pronounced.
Both the State and accused must be accorded appellate review on this question.
A careful study of the records of both first and second trials show a very high degree of similarity. There is nothing to show why a second sentence should be more severe than the first.
This Court has authority under Florida Statutes § 59.34, F.S.A., to "give such ... sentence ... as the court below should have given... ." Accordingly, this cause is hereby remanded to the trial court with directions to vacate the death sentence and impose a sentence of life imprisonment.
It is so ordered.
BOYD and McCAIN, JJ., concur.
DREW (Retired), J., concurs specially with opinion.
ERVIN, J., concurs specially with opinion and concurs in per curiam opinion and with DREW, J.
CARLTON, J., dissents with opinion.
ROBERTS, C.J., dissents and agrees with CARLTON, J.
DEKLE, J., dissents with opinion.
DREW, Justice (Retired) (concurring specially):
The Constitution provides that appeals may be taken by a defendant "as a matter of right from all final judgments" of trial courts to the District Courts of Appeal of the district in which the trial court is *261 located.[1] Another Section of the Constitution provides that "appeals from trial courts may be taken directly to the supreme court, as a matter of right ... from judgments imposing the death penalty."[2]
The Legislature, as pointed out in the majority opinion, has determined that insofar as crimes divided into degrees are concerned (homicide is such a crime), the conviction of a lesser degree operates as an absolute bar to a subsequent prosecution for the same offense for a higher degree.[3] This Court, by rule, has extended such immunity to crimes which "include a lesser offense."[4]
In the enactment of the above legislation  and in the promulgation of the foregoing rule  the Legislature and this Court are saying the same thing, viz: that when one is tried for offenses divided into degrees or which include a lesser offense, the principles of former jeopardy apply thereafter to the greater offense. It is not, I think, the offense as such with which the Legislature and Court are concerned, but the extent of the punishment authorized for such crimes. If murder in the first degree, murder in the second degree, murder in the third degree and manslaughter were all punishable by the same penalties, there would be no practical purpose to be served by such statute and rule. The crimes are greater or lesser  in the light of these statutes  because the authorized punishment is greater or lesser. And I feel certain that one of the purposes of these enactments was to insure to each defendant so convicted the right to an effective unprejudiced and unconditional review. They provide that a defendant charged with murder in the first degree who seeks review of a conviction  for instance  of murder in the second degree (where the maximum penalty is life imprisonment)[5] may appeal without thereafer being subject to prosecution for murder in the first degree and the infliction of the death penalty. While the statute and rule admittedly do not cover the situation before us here in exact language, it is inescapable to me that the very purpose of the statute and rule would be violated if we were to hold as the State urges that a conviction of murder in the first degree with a recommendation of mercy, does not prevent the imposition of the death penalty in a subsequent prosecution for the same crime after reversal by an appellate court or a new trial granted by the trial court. The price which might be exacted for a successful appeal  or successful motion for new trial  is not an increased number of years imprisonment (admittedly proscribed by the practical application of the Statute and Rule) but the most precious possession  human life.
On the merits of this case, and the construction of the purpose and intent of this Statute and Rule as applied to the facts here, I think the answer is crystal clear. The Constitution itself recognizes the great difference between a conviction of murder with a recommendation of mercy and one imposing the death penalty by providing for review of the former by the District Courts of Appeal and the latter by this Court. To say, or even to contend, that this difference is not greater than the difference in the other situations pointed out which prompted the adoption of this Statute and Rule, is to ignore reality. Moreover, the grant of review as a matter of right would be unconstitutionally burdened  even effectively denied  if we were to approve the imposition of the death penalty in a second trial.
I pose the question: could a conscientious lawyer advise an appeal under such circumstances? And, would a defendant be willing to take such a gamble if he were *262 fully advised as to the possible consequences. An answer to this question furnishes the answer to a decision here on the merits.
Procedurally  admittedly  the problem is not easy. The majority view is that the question of the penalty should be determined by the trial judge in the second trial under the conditions named in the opinion. I cannot accept this portion of the opinion. In the first place, it does not eliminate the possibility of a death sentence in the second trial and, in the second place, it gives to the judge a power he does not possess under the law and vests in him a grave responsibility and burden he should not be required to carry  that of determining, on a set of conflicting facts, whether a man should live or die.
I think the only lawful solution requires us to say that a recommendation of mercy at the first trial forever bars a sentence of death at any subsequent trial for the same offense. If the defendant is convicted at the second trial  after such a recommendation  the maximum sentence which the second or subsequent trial judge may impose, is life imprisonment.
I therefore concur in the per curiam opinion and judgment affirming the sentence and judgment of guilty but remanding the same with directions to the trial judge to vacate the sentence of death and impose a sentence of life imprisonment.
ERVIN, J., concurs.
ERVIN, Justice (concurring specially):
I concur in the Per Curiam opinion and Justice Drew's opinion as well. F.S. Section 59.34, F.S.A., expressly authorizes an appellate court "to give such judgment, sentence, or decree as the court below should have given; or otherwise as to it may appear according to law." (e.s.) This statute appears to authorize us to apply the doctrine of Pearce or any other applicable principle of law to cases that may involve a death sentence. Compare Barlow v. Taylor (Fla.) 249 So.2d 437, where the issue of penalty was treated separately from that of guilt in a death case. See U. of F. Law Review, Vol. XXIII, page 736, et seq.
CARLTON, Justice (dissenting):
Fla. Stat. § 920.09(1), F.S.A., requires that the new trial should proceed in all respects as if no former trial had been had. The first conviction did not acquit the defendant of any degree of the offense.
The second trial was held on an indictment charging murder in the first degree. Fla. Stat. § 782.04, F.S.A., provides that the punishment for such crime shall be death. If defendant were convicted of murder in the first degree, Fla. Stat. § 919.23, F.S.A., provides that a majority of the jury in their verdict could recommend him to the mercy of the Court. Thereupon, a mandatory sentence of imprisonment for life would be imposed. There is nothing in Florida procedure or Florida Statutes which could eliminate the statutory penalty of death upon conviction of murder in the first degree except a subsequent recommendation to mercy by the jury after conviction.
A somewhat similar situation arose in Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919). Stroud was indicted for murder in the first degree, convicted, and sentenced to be hanged. This conviction was reversed by the Circuit Court of Appeal and Stroud was again tried. On the second trial, Stroud was found guilty but the jury recommended mercy. This conviction was also reversed.
Upon the third trial, Stroud was found guilty of murder in the first degree. No recommendation of mercy was made. The Supreme Court of the United States upheld the conviction, saying:
"[I]t is apparent that the indictment was for murder in the first degree; a single count thereof fully described that offense. Each conviction was for the offense charged. It is true that upon the *263 second trial the jury added `without capital punishment' to its verdict, and sentence for life imprisonment was imposed. This recommendation was because of the right of the jury so to do under section 330 of the Criminal Code (35 Stat. at L. 1152, chap. 321, Comp.Stat. § 10,504, 7 Fed.Stat.Anno. 2d ed. p. 983).
"This section permits the jury to add to the verdict, where the accused is found guilty of murder in the first degree, `without capital punishment,' in which case the convicted person is to be sentenced to imprisonment for life. The fact that the jury may thus mitigate the punishment to imprisonment for life did not render the conviction less than one for the first degree murder. Fitzpatrick v. United States, 178 U.S. 304, 307, 20 S.Ct. 944, 44 L.Ed. 1078, 1080.
"The protection afforded by the Constitution is against a second trial for the same offense. Ex parte Lange, 18 Wall. 163, 21 L.Ed. 872; Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114, 1 Ann.Cas. 655, and cases cited in the opinion. Each conviction was for murder as charged in the indictment, which, as we have said, was murder in the first degree. In the last conviction the jury did not add the words `without capital punishment' to the verdict, although the court in its charge particularly called the attention of the jury to this statutory provision. In such case the court could do not less than inflict the death penalty. Moreover, the conviction and sentence upon the former trials were reversed upon writs of error sued out by the plaintiff in error. The only thing the appellate court could do was to award a new trial on finding error in the proceeding, thus the plaintiff in error himself invoked the action of the court which resulted in a further trial. In such cases he is not placed in second jeopardy within the meaning of the Constitution. Trono v. United States, 199 U.S. 521, 533, 26 S.Ct. 121, 50 L.Ed. 292, 296, 4 Ann.Cas. 773."
I would, therefore, affirm the judgment under attack.
ROBERTS, C.J., and DEKLE, J., concur.
DEKLE, Justice (dissenting):
I respectfully dissent on what I view, along with Justice Carlton, as a misinterpretation and misapplication of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1960), in the majority and special concurring opinions.
On defendant's plea of not guilty, he was tried by a jury which returned a verdict of guilty with recommendation of mercy. Life sentence was imposed in accordance with the statute.[1]
Defendant moved for a new trial which the trial judge granted, based upon the judge's failure to submit his written instructions to the jury. The cause was thereupon set for retrial. Defendant objected to being retried at all, claiming that it placed him in double-jeopardy contrary to North Carolina v. Pearce, supra. This motion was denied and the cause proceeded to trial. The jury at the second trial likewise reached a verdict of guilty but without recommendation of mercy, requiring the Court to sentence defendant to death in the electric chair, prior to which sentencing the defendant again raised the double-jeopardy claim and added the further ground of a violation of due process under the Fifth and Fourteenth Amendments of the United States Constitution. His objections were overruled. This appeal ensued upon the same two grounds (and others which are adequately treated in the majority opinion).
Pearce involved a more severe sentence (penalty) being imposed by the Judge upon retrial, suggesting possible "vindictiveness," the opinion said, because of being compelled to retry the case. This was viewed by that opinion as a possible restriction *264 on the rights of a defendant to appeal (knowing that he may suffer the consequences of a greater penalty if he is successful on the appeal and yet is convicted again). (This is a concern expressed by Justice Drew.) In order to assure the absence of such a motivation, the Court expressly provided: (395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656, 670)
"[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."
That opinion likewise pursued this fairness in requiring that time served on the prior sentence must be credited upon the new one, to insure that there is no multiple punishment for the same offense.
This is very good reasoning in the case of a sentence of years, but it cannot with any logic be applied in the instant case where there is no discretion in the judge under our Fla. Stat. § 919.23(2), F.S.A. Our statute simply makes the judge's action a mandatory one in accordance with what the verdict of the jury may be, recommending mercy or not. It would not matter whether the judge was "vendictive" or "remorseful". His action is dictated by the law.
The principles laid down under the "period of years" criterion in Pearce cannot very well be followed here. For example, the consideration, suggested to be weighed in re-sentencing, of "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." does not and cannot lend itself to a capital case conviction. Conduct cannot be a criterion in such a case; there is but one available sentence under the law.
Recognizing this, the defendant then seeks to transpose the principle involved, over from the judge to the jury and suggests that the jury may just as well be vindictive in its "sentencing" through its verdict. This is a reasonable inquiry, but it will not withstand the light of close examination; it will not fit into the principles of Pearce. In the first place, it is not the same jury at all; it has no "vindictiveness" that could be brought forward from any prior time since there was no prior involvement by this jury. There is no reason why they should feel any concern in this regard. Of course it would be impossible to show on the record as indicated in Pearce why the jurors might be "vindictive" in failing to recommend mercy. They were not involved in the first trial and in most instances have no knowledge of just what that situation may have been. It is only through indirect references, as in cross examination referring to the earlier testimony (if this develops in the second trial), that it is even known that it is a retrial.
The second trial which defendant sought just did not produce a better result as defendant hoped. It was a new trial  exactly what he requested and was awarded in the Order granting his motion for a new trial. Pearce puts it (395 U.S. 711, 721, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656, 667):
"[T]he original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean... ."
As the word implies, the trial is "new" in every respect and every possible result was submitted to the jury within the evidence. The defendant could have come out with any one of these. They included, as he well knew, the fatal one of guilty without recommendation. He simply gambled his recommendation of mercy which he had been granted in the first trial and lost. He contends in effect that he gained a "vested interest" in the mercy recommendation of the first trial and could not be again subjected to anything worse, citing North Carolina v. Pearce, supra. The principle of law of the case hardly applies in this situation.
Pearce recites that: (395 U.S. 711, 719, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656, 666)
"At least since 1896, when United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 *265 L.Ed. 300, was decided, it has been settled that this constitutional guarantee imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside... . [citing authorities] And at least since 1919, when Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103, was decided, it has been settled that a corollary of the power to retry a defendant is the power, upon the defendant's reconviction, to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction." (Emphasis added)
Pearce accordingly holds that the guarantee against double jeopardy imposes no restrictions upon the length of a sentence imposed upon reconviction. The words of the Opinion were as follows: (395 U.S. 711, 723, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656, 668)
"We hold, therefore, that neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction."
This is an absolute answer by the United States Supreme Court to Justice Drew's view that it is double jeopardy.
Absent the involvement of any "vindictiveness" that need be explained in a subsequent resentence to a period of years that may be greater than the first, Pearce does not and cannot apply in a capital case where the verdict of the jury upon retrial is without recommendation. This is necessarily the case since it is solely within the jury's province and there is no discretion on the judge's part and no basis for the "prejudice" which is the foundation for the "vindictiveness" provision in Pearce.
Pearce was similarly applied in State v. Miller, 231 So.2d 260 (3d DCA Fla. 1970), cert. denied 238 So.2d 105 (Fla. 1970). The very able opinion of Swann, J. quotes from Mann v. State, 23 Fla. 610, 3 So. 207 (1887) at 211, which points out the logic of this application and then cites Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), to the same effect. The dissent in State v. Miller, supra, by then Chief Judge Pearson is in the exact vein of the dissent herein of Justice Drew.
The majority opinion now takes the opposite view in 1971 on the precise question, in what is a reversal of 1970 Miller, with Drew, Ervin and Boyd, JJ., concurring in the contrary holding of this Court in Miller.
In examining this very interesting point in every possible way for the benefit of the appellant, there naturally occurs the consideration of whether this constitutes some unreasonable restriction or impediment on his right of appeal. Of course there is no legal limitation imposed, and if there be some practical consideration, as the chance of a different result upon retrial, then this is no more than one of many considerations inherent in every decision as to whether or not to appeal, or, for that matter, whether or not to plead guilty and receive an assured lighter penalty rather than gamble a worse result.
How many appeals does a convicted defendant get? Litigation after being fairly considered and a final conclusion reached, must come to an end at some time. There must also be some deterrent to a defendant repeatedly ad infinitum seeking the retrial of his case, dropping off at each stage that portion on which he should be successful. After a defendant gets his recommendation then the thing to "go for" would of course be second degree, then manslaughter, followed by aggravated assault, finally simple assault, and if even that offended him, insist on a further trial to be sure he gets an acquittal because, under this view, the only thing at that juncture to which he could be subjected, would be the last result, namely, simple assault. In this manner, there would never be anything to lose and never be any end to litigation which is already choking the courts of this nation by its sheer volume, much of which is caused by the repeated reconsideration and retrial of a large number of these cases. The resulting chaos and injustice to the public and to the victims and their rights become apparent.
Counsel for appellant in his very able efforts for his client also suggests that since the error was the court's in failing to submit *266 the court's written instructions to the jury, that the Court should bear the burden of its error and that appellant should not thereby have to suffer any worse detriment than the result of that trial. This is a rather interesting observation but hardly one on which to base a reversal. The new trial was granted at the instance of the defendant, on the defendant's motion and on this as one of the very grounds urged for the benefit of the appellant. (Proof that the "error" was harmless is the fact that there was a worse result without it!) Almost all errors are in effect those of the court, either in its rulings or in permitting some action which occurred or refusing some requested action, so that this can hardly be considered as a special ground which should inure to a defendant's benefit for purposes of a new trial. Appellant has had the benefit of what he asked for, a new trial.
I have thoroughly scrutinized the record and have carefully examined all of the evidence in accord with the requirements of Fla. Stat. § 924.32, F.S.A., in order to determine whether the ends of justice require a new trial. Finding no error and that the ends of justice do not demand a new trial, I would affirm the judgment under attack.
CARLTON, J., concurs.
NOTES
[1] Fla. Stat. § 919.23(2), F.S.A.
[2] 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
[3] Ibid.
[4] Repealed by § 180, Ch. 70-339, effective January 1, 1971, Fla. Stat. 1970 Supplement.
[5] 235 So.2d 545 (Fla.App.1st 1970).
[6] Id. at 546.
[7] Fla. Stat. § 919.23(2), F.S.A.: "Whoever is convicted of a capital offense and recommended to the mercy of the court by a majority of the jury in their verdict, shall be sentenced to imprisonment for life; or if found by the judge of the court, where there is no jury, to be entitled to a recommendation to mercy, shall be sentenced to imprisonment for life, at the discretion of the court." (e.s.)
[1] Section 5(3), Article V, Florida Constitution, F.S.A.
[2] Section 4(2), Article V, Florida Constitution.
[3] Florida Statutes, § 920.09(4), F.S.A.
[4] R.Cr.P. 1.640(a).
[5] Florida Statutes, § 782.04(2), F.S.A.
[1] Fla. Stat. § 919.23(2), F.S.A.