363 A.2d 1356.

STATE *vs.* JOHN J. WELCH.

OCTOBER 5, 1976.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

108

KELLEHER, J. In April 1973, John J. Welch was charged in a two-count indictment with the unlawful possession and sale of a hallucinogenic drug, to wit, phencyclidine, in violation of the Uniform Narcotic Drug Act, G. L. 1956 (1968 Reenactment) §§21-28-3, 21-28-31, and 21-28-32. The defendant, having waived his right to a jury, was tried before a justice of the Superior Court on June 3, 1975. At the trial the court granted a defense motion to dismiss the illegal possession count. The state's case regarding the illegal sale of phencyclidine consisted of the testimony

of a police detective of the West Warwick Police Department and a report containing a toxicologist's analysis of the pills the defendant had allegedly sold to a police informer. The detective narrated the facts surrounding the informer's purchase of two pills from Welch for $3. The report indicated that the confiscated pills "showed the presence of phencyclidine." This was the sum and substance of the state's case. The defense presented no evidence. After oral arguments the trial justice ruled that phencyclidine was a hallucinogenic drug and explained that his finding was "* * * based on (I suppose judicially noted) * * * the Court's personal knowledge of many cases that have been tried before it involving the particular drug. To this Court's present knowledge, it is an hallucinogenic." In taking this position, the trial justice erred.

In a criminal prosecution the state is bound to prove each and every element of an offense beyond a reasonable doubt before a conviction can lie. *In re Pereira*, 111 R. I. 712, 714, 306 A.2d 821, 823 (1973); *State* v. *Koohy*, 105 R. I. 197, 201, 250 A.2d 711, 714 (1969). The uniform act provides criminal sanctions for the unauthorized manufacture, possession, control, sale, prescription, dispensing, or compounding of any narcotic drug. Section 21-28-3. The term "narcotic drug" is defined at length in §21-28-2(15). It includes coca leaves, opium, cannabis, hallucinogenic drugs, "any other drugs to which the federal narcotic laws may now apply," and any drug which the Director of Health, after conducting a hearing, believes to have the same capability for producing or sustaining addiction as that possessed by morphine or cocaine. The "federal narcotic laws" is further defined as meaning the laws of the United States relating to opium, coca leaves, and "other narcotic drugs." Section 21-28-2(16).

Since the indictment charged Welch with the illegal sale of a "hallucinogenic" drug, the state was bound to prove

that phencyclidine was a hallucinogenic drug. The record is devoid of evidence that warrants the inference that the ingestion of a pill containing phencyclidine would cause the ingestor to hallucinate. While the trial justice alluded to his use of judicial notice, it is obvious that he was relying on knowledge that he had gained while presiding at other trials where the substance in question was phencyclidine.

It is an elemental rule that a factfinder at a trial must base the verdict exclusively on evidence duly received at that trial and on the reasonable inferences drawn therefrom. The trial justice's reliance on knowledge obtained at other trials is completely at odds with Welch's constitutional right "to be confronted with the witnesses against him" — a right which comes with a double guarantee by virtue of the sixth amendment of the United States Constitution and art. I, §10, of the Rhode Island Constitution. This court has said that the primary purpose of the confrontation clause is the pursuit and ascertainment of truth by affording the accused the opportunity to test his or her accuser's veracity in the crucible of cross-examination. *State* v. *Lerner,* 112 R. I. 62, 84, 308 A.2d 324, 339 (1973). Here, Welch never saw or, up to this point, does not know the identity or the expertise of those through whom the trial justice acquired his knowledge of phencyclidine and how it alters one's perception.

Even if we were to consider that the trial justice's personal knowledge of pharmacology came as a result of his invocation of the doctrine of judicial notice, the conviction still could not stand. This court has said that a trial justice cannot supply evidence of an essential element of a crime by way of judicial notice if a jury hearing the same evidence could not draw a similar inference. *State* v. *Main,* 94 R. I. 338, 346, 180 A.2d 814, 818-19 (1962). The power of taking judicial notice should be exercised with caution,

and its scope should be measured by the breadth of common knowledge on the particular subject. 1 Wharton, *Criminal Evidence* §37 at 64 (1972 ed.). If the facts are not a proper subject for judicial notice, they must be proved. It is our opinion that at this particular point in time few people can pronounce "phencyclidine" let alone attest to its hallucinogenic propensity. The trial justice's finding as to the hallucinogenic qualities of phencyclidine is without any evidentiary support whatsoever and is clearly wrong.

Immediately after finding that phencyclidine was a hallucinogenic, the trial justice went on to say: "I also feel that it is one of those drugs proscribed by federal statute which is incorporated by reference into the Rhode Island statute." The state, in seeking to sustain the trial justice's feeling as to the federal law, points out that Congress, by its enactment of the Drug Abuse Prevention and Control Act of 1970, has classified phencyclidine as a "controlled substance." 21 U.S.C.A. §812(c), Schedule III(b) (7) (1972).

In arguing this facet of the appeal, both the defense and the prosecution have somehow overlooked the language and various meanings given over the years to the term "narcotic drugs." Rhode Island adopted the Uniform Narcotic Drug Act in 1934 at a time when "grass" was to be cut, not smoked. Public Laws 1934, ch. 2096. For years the Act defined "narcotic drugs" as meaning "* * * coca leaves, opium, cannabis and every substance neither chemically nor physically distinguishable from them." Public Laws 1936, ch. 2365. Subsequently, the Commissioners on Uniform State Laws at their 1952 conference approved a suggested revision in the definition of "narcotic drugs." The definition would be expanded to include any drug to which the federal laws on the subject then applied and any other drug which a responsible state official or agency has desig-

112

nated as having an "addiction-forming or addiction-sus-taining liability." 9 Uniform Laws Annotated at 531 (1973 ed.). The amendment came about as a result of sugges-tions made by the Federal Bureau of Narcotics. This agen-cy desired that all state statutes would cover the same drugs as those set forth in the federal laws, and it also sought to provide an expenditious procedure for regulat-ing an ever-increasing number of synthetically produced drugs which were beginning to find their way into the illicit drug traffic. *Id.* The General Assembly adopted the commissioners' suggestions in 1954 when it enlarged the Act's definition to include the "any other drugs" proviso and deputized the Director of Health as the official to conduct hearings and classify additional drugs as narcotic drugs.[1] Public Laws 1954, ch. 3329. Later, in 1967, with the advent of the psychedelic age, the General Assembly included hallucinogenics within the definition. Public Laws 1967, ch. 31.

Several points become clear once due consideration is given to the various legislative changes in the definition of "narcotic drugs." First, the "any other drugs" proviso refers only to those substances which, according to the federal laws in effect on April 27, 1954 (the effective date of the amendment), were considered as being "narcotic drugs." *State* v. *Funk,* 501 S.W.2d 526, 527 (Mo. App. 1973). Second, the General Assembly could not in 1954 incorporate by reference the federal controlled substances statute which did not become law until 1970 and which, incidentally, repealed all those federal narcotics statutes which might have been the "now" law in 1954. Finally,

---

[1]In 1958 the commissioners offered another revised version of the "any other drugs" proviso so as to include any drug to which the federal laws then applied or to which such laws might apply at the time of the occurrence of any event to which the Act may be applied. 9 Uniform Laws Annotated at 531 (1973 ed.).

we note that the grand jury indicted Welch solely because of his involvement with a drug that was specifically described in §21-28-2. He was not charged with illegal conduct because he was dealing with another drug that might have been contraband under the federal laws.

The defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court with direction to enter judgment for the defendant.[2]

*Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, for plaintiff.

*Aram K. Berberian,* for defendant.

---

[2]We note that the General Assembly at its January 1974 session adopted, effective July 1, 1974, the Uniform Controlled Substances Act, P. L. 1974, ch. 183. When the 1974 legislation became effective, the Uniform Narcotic Drug Act was repealed. Phencyclidine is listed in the Uniform Controlled Substances Act and is described as a "depressant." Section 21-28-2.08, Schedule II(e)(6). The Act does contain a list of "Hallucinogenic Substances," but phencyclidine is not listed in this category. Section 21-28-2.08, Schedule I(d)(1)-(17).