495 So.2d 145 (1986)
James Roger HUFF, Appellant,
v.
STATE of Florida, Appellee.
No. 65695.
Supreme Court of Florida.
August 28, 1986.
Rehearing Denied October 27, 1986.
*147 James B. Gibson, Public Defender and Christopher S. Quarles, Chief, Capital Appeals, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Jim Smith, Atty. Gen. and Ellen D. Phillips, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
The appellant, James Roger Huff, was convicted in October 1980 of two counts of first-degree murder and was sentenced to death for the killing of his parents, Norman and Genevieve Huff. In Huff v. State, 437 So.2d 1087 (Fla. 1983) (Huff I) we reversed the convictions and sentences and remanded for a new trial. This appeal is from the new trial where appellant was again convicted and sentenced to death on both counts. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the conviction and the sentences.
On April 21, 1980, the victims were found murdered in a remote (public dump) area of Sumter County, near Wildwood, Florida. Appellant was the first person to report the killings. He appeared at the house of a nearby resident, Foster, and had Foster notify the police. The version of events appellant told to Foster, the police and eventually the jury in the instant case, was essentially that an unknown person or persons standing beside a green Ford LTD, which was parked on a remote road, had "flagged down" the Huffs while appellant was driving on the day of the murders. When the appellant stopped to render assistance, this alleged assailant entered the Huff's vehicle at gunpoint, forcing the appellant to drive wherever the assailant directed; the green Ford was allegedly following behind the Huff's vehicle. Eventually they ended up at the dump site where the assailant robbed the Huffs. Appellant claimed he was knocked unconscious, and when he awoke outside the vehicle, found both his parents dead beside their vehicle.
Appellant's first allegation of error concerns the exclusion of an expert witness's testimony offered by the defense. An integral part of appellant's defense of innocence at trial was that the crime scene was improperly processed and contaminated resulting in the destruction of evidence concerning the alleged assailants and their vehicle. Several weeks into the trial below, on a Friday, the defense attempted to introduce as an expert witness White, a retired police officer, concerning the improper and inadequate processing of the crime scene. During a proffer of the witness, the state brought out that White had neither visited the crime scene nor read the testimony or reports of the investigating officers at the scene. The trial court, without ruling on White's status as an expert, ruled that the *148 information upon which White was to base his opinions was so "totally inadequate" that his testimony would not only be incompetent, it would also be irrelevant and immaterial. Over the weekend, White read a portion of the reports and transcripts, but his testimony was again rejected by the trial judge.
The two relevant factors for trial courts to consider when determining the admissibility of expert testimony are:
First, the subject must be beyond the common understanding of the average layman. Second, the witness must have such knowledge as "will probably aid the trier of facts in its search for truth." Mills v. Redwing Carriers, Inc., 127 So.2d 453, 456 (Fla. 2d DCA 1961).
Buchman v. Seaboard Coast Line Railroad Co., 381 So.2d 229, 230 (Fla. 1980).
The critical factor for our analysis here is whether this testimony would aid the trier of fact. It is axiomatic that it is within the province of the trial court to determine whether to admit the testimony of a purported expert witness. The decision of the trial court is conclusive unless erroneous or founded upon error in law. See, e.g., Fred Howland, Inc. v. Morris, 143 Fla. 189, 196 So. 472 (1940) and cases cited therein.
A general rule of law concerning the admissibility of expert witness testimony is that the expert, once qualified by the trial court as such, normally decides for himself whether he has sufficient facts on which to base an opinion. The exception to this rule is when the factual predicate submitted to the expert omits facts which are obviously necessary to the formation of an opinion. When the factual predicate is so lacking, the trial court may properly refuse to allow the testimony. Spradley v. State, 442 So.2d 1039 (Fla. 2d DCA 1983); Johnson v. State, 314 So.2d 248 (Fla. 1st DCA 1975); Nat Harrison Associates, Inc. v. Byrd, 256 So.2d 50 (Fla. 4th DCA 1971).
Our review of the record indicates that, at best, White's testimony would have been a general critique of proper police practice in processing crime scenes, a collateral and irrelevant issue. His testimony would have presented no probative evidence of appellant's guilt or innocence. We conclude that the trial court did not abuse its discretion by finding that the witness White had such an inadequate factual basis for his opinion that his testimony would not have aided the trier of fact.
Appellant's next contention concerns an allegedly improper judicial comment on the appellant's veracity during cross-examination of the appellant.[1] The context in which the remark was made shows that this claim is meritless. Counsel for appellant objected to the form of a question. The trial judge held that the form of the state's question was proper because the appellant's answer was "vague." Appellant claimed that his motion for mistrial should have been granted. We disagree. The comment by the trial court was in direct response to legal argument from counsel and was simply a neutral ruling on the objection allowing the objected-to question to be asked again. Any prejudice which theoretically could have resulted from the remark could have been dispelled had the defense requested a curative instruction from the trial court. Henderson v. State, 463 So.2d 196 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 3542, 87 L.Ed.2d 665 (1985). We find that the trial court acted within its discretion in denying the defendant's motion for mistrial. Salvatore v. State, 366 So.2d 745 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979). Johnsen v. State, 332 So.2d 69 (Fla. 1976).
Appellant next claims as error the trial court's failure to suppress an inculpatory statement made by the appellant. Once the police arrived on the murder scene, *149 appellant was given his Miranda[2] warnings and was placed in the back of a Wildwood police car by Officer Overly. Shortly thereafter, Sheriff Johnson arrived on the scene, put his head in the police car and asked what had happened. Appellant responded, "I shot them in the face." Johnson testified that the appellant put his hands over his face and would not respond to Johnson's question of whom he had shot. When the appellant spoke again he stated, "They shot them in the face."
In Huff I, the trial court determined that the Miranda warnings were adequate and determined that the statement was admissible. Due to the unavailability of Overly at trial, however, the statement was not used in Huff I. Appellant's claim sub judice is that the trial judge erroneously relied on the "law of the case" from Huff I to determine the admissibility of the statement. Our review of the record reveals that this is simply not so. A new suppression hearing was held and Overly was questioned extensively by counsel concerning the adequacy of the Miranda warnings. Overly testified that he read appellant the warnings from the standard form used by the Wildwood police which was subsequently introduced into evidence at trial. Overly had originally testified at the Huff I suppression hearing that appellant understood his rights. His testimony at the instant suppression hearing was essentially that, with the passage of four years since the first trial, he was not as sure that appellant fully understood the warnings. Although Overly's most recent testimony is somewhat ambiguous, the inferences drawn from his testimony were resolved by the trial court in favor of the state, and we will not substitute our judgment for that of the trial court. Ross v. State, 386 So.2d 1191, 1195 (Fla. 1980). In ruling the statement admissible following the suppression hearing, the trial judge held: "The state has shown by preponderance of the evidence that the Miranda warning was adequately given. I feel it is law of the case and res judicata and will not disturb the original ruling." The trial court's statement on law of the case simply was his way of stating that no new evidence had been presented in this suppression hearing that would require overturning the Huff I holding on this issue. This was not error.
Appellant's next allegation is that it was error for the trial court to allow witnesses Foster and Williams to give opinion testimony on an ultimate issue. Appellant's first claim concerns Foster, the neighbor who called the police at appellant's behest. Foster testified that after he viewed the murder scene, he told his son "this thing don't look right. How is it that three people in the car, two people on the road and he's out over here." When the state asked Foster what didn't look right, the defense objected that this called for an opinion and had already been answered. We find that this testimony was already before the jury when appellant objected. Even were we to assume that this was error, it would clearly be harmless. A judgment will not be reversed unless the error was prejudicial to the substantial rights of the appellant. Palmes v. State, 397 So.2d 648, 653 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981). There is no such showing here. Appellant's next cited instance on this issue concerns the testimony of Williams, one of the homicide investigators at the crime scene. Williams, like all of the other investigators who testified below, was questioned extensively by the defense on cross-examination concerning the improper processing of the crime scene. The thrust of these questions was that only evidence of the appellant's guilt was preserved. On redirect by the state, the prosecutor elicited from Williams the fact that no evidence of appellant's innocence was ever found and had any been found it would have been included in Williams's reports. After the defense's objection to these questions was overruled, Williams further testified that he had discovered nothing in his investigation to change his mind that appellant was *150 guilty and that he still held that opinion when testifying.
Although Williams' remarks standing alone and taken out of context could be considered error, our review of the record shows that the statements elicited by the state were to explain and clarify the testimony elicited by the defense during cross-examination. This is a proper purpose for redirect examination. Jones v. State, 440 So.2d 570, 576 (Fla. 1983). The defense counsel's examination of Williams questioned the investigating officer's competency in processing the crime scene. The resulting implication was that the police investigation was conducted solely to justify the arrest of appellant. Viewed in this light, the defense did indeed "open the door" for the testimony in question. Blair v. State, 406 So.2d 1103, 1106 (Fla. 1981). There was no error in the trial court's overruling the defense objection.
Appellant claims that his motion for judgment of acquittal should have been granted, as the case against him was totally circumstantial and did not exclude every reasonable hypothesis of innocence. See McArthur v. State, 351 So.2d 972 (Fla. 1977). As to the latter contention, it is apparent from our review of the entire record that appellant's hypothesis of innocence was simply unreasonable. No evidence whatsoever was introduced to support appellant's story; in fact, all of the evidence adduced at trial, with the exception of appellant's testimony, pointed to his guilt. The reasonableness of a hypothesis of innocence is a question for the jury. Williams v. State, 437 So.2d 133 (Fla. 1983), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 164 (1984); Rose v. State, 425 So.2d 521 (Fla. 1982), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983). The jury here could properly conclude that appellant's story was untruthful and unreasonable.
Appellant's claim concerning the insufficiency of the circumstantial evidence against him must likewise be rejected. Circumstantial evidence alone is sufficient to convict in a capital case in the absence of a reasonable alternative theory. Huff I; McArthur. As we stated in Huff I:
The state's evidence was clearly sufficient to have the case taken to the jury. The evidence that appellant was seen in the back seat of the death car with his parents an hour and a half before the murders were reported, the evidence that the killer had to be positioned in the back seat, the evidence that this car had been moved sometime subsequent to the murders, and the testimony of witness Joyner that he saw appellant alone driving a car immediately after the time of the murders, is evidence inconsistent with appellant's story and inconsistent with any reasonable hypothesis of innocence. In light of the state's evidence, the jury could properly have found appellant's story to be unreasonable beyond and to the exclusion of a reasonable doubt. The trial court correctly denied appellant's motion for acquittal.
437 So.2d at 1088, 1089.
This same evidence was adduced in the instant trial. Additionally, this jury was allowed to hear appellant's inculpatory statement that "I shot them in the face." Also, unlike in the first trial, appellant testified in his own behalf, giving the jury an opportunity to hear appellant's story and observe his demeanor. We hold that the trial court properly denied the motion for acquittal.
Finally, appellant contests the imposition of two sentences of death. It must be noted at the outset that appellant explicitly, knowingly, voluntarily and intelligently waived his right to an advisory sentencing jury recommendation. This waiver was against the advice of appellant's own counsel and over the state's objection. We have previously held that such a waiver is permissible. Palmes v. State, 397 So.2d 648 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981); State v. Carr, 336 So.2d 358 (Fla. 1976).
In sentencing appellant to death on both counts, the trial court found three statutory aggravating factors: committed for *151 pecuniary gain;[3] cold, calculated and premeditated without any pretense of moral or legal justification;[4] and heinous, atrocious or cruel.[5] The trial court found one statutory mitigating factor; appellant had no prior, significant criminal history.[6] Before pronouncing sentence, the trial court, at the state's request and over the defense's objection, took judicial notice of the proceedings from Huff I. Appellant alleges that this was error. We agree.
Our review of the record shows that the trial court essentially adopted the sentencing phase findings of the trial court in Huff I, and also filed a "supplement to finding of fact supporting death sentence." In the supplemental findings, the trial court judge stated that he took judicial notice of the Huff I proceedings "in fairness to the defendant as well as the state." This interest in fairness is unquestionably laudable and represents perhaps the ultimate goal of our system of justice. However, we find that in a situation such as is presented here, where, upon appellate review an accused has been granted a new trial, the utilization by judicial notice of evidence produced at the first trial constitutes a process which would make facts conclusive against an opposing party although these facts were unsupported by the evidence introduced in the new trial, and were therefore not subject to refutation by the party against whom they were offered.
The concept of judicial notice is essentially premised on notions of convenience to the court and to the parties; some facts need not be proved because knowledge of the facts judicially noticed is so notorious that everyone is assumed to possess it. As we held over a half century ago,
... the courts should not exclude from their knowledge matters of general and common knowledge which they are presumed to share with the public generally. This does not mean knowledge which they individually possess by reason of personal investigation and research, but matters of common notoriety which because of such notoriety they share or should share in common with the public. It has been well said, however, that "This power is to be exercised by courts with caution. Care must be taken that the requisite notoriety exists." Brown v. Piper, 91 U.S. 1 [Otto] 37 [23 L.Ed. 200]. The courts of the land which are charged with the great responsibility of determining matters upon which the life and death of a human being may depend, can well be trusted to exercise the proper caution in determining what matters it will take judicial notice of. It is upon the wisdom and discretion of the judges of our courts, that the doctrine of judicial notice must rest.
Amos v. Mosley, 74 Fla. 555, 567-68, 77 So. 619, 623 (1917).
The essential teaching of Amos is that first, the facts to be judicially noticed must be of common notoriety, and second, courts should exercise great caution when using judicial notice. As has been held in this state and elsewhere, judicial notice is not intended to "fill the vacuum created by the failure of a party to prove an essential fact." Moore v. Choctawhatchee Electric Co-operative, 196 So.2d 788, 789 (Fla. 1st DCA 1967). See also McDaniels v. State, 388 So.2d 259 (Fla. 5th DCA 1980); Linscome v. State, 584 P.2d 1349 (Okla. Crim. App. 1978) (judges may not judicially notice evidence presented before the court in another proceeding absent a stipulation from the parties); James v. State, 546 S.W.2d 306 (Tex. Crim. App. 1977) (purpose of judicial notice is one of convenience to save time and eliminate proof of facts about which there is no controversy); State v. Lynch, 115 Ariz. 19, 562 P.2d 1386 (Ct.App. 1977) (judicial notice cannot be taken of the truth of testimony received in another action); State v. Welch, 117 R.I. 107, 363 A.2d 1356 (1976) (judicial notice is not a *152 substitute for proof of an essential element of a crime; common knowledge is the scope of judicially noticeable facts).
Critical for an understanding of our determination here that the wholesale incorporation of the Huff I record by judicial notice was an abuse of discretion and error by the trial court below, is the effect the granting a new trial to a criminally accused. Fla.R.Crim.P. 3.640(a), provides: "When a new trial is granted, the new trial shall proceed in all respects as if no former trial had been had... ." The exceptions to this rule are not relevant here.
While resort may be had to the records of both trials for purposes of a double jeopardy analysis, McNish v. State, 47 Fla. 69, 36 So. 176 (1904), or in comparing disparate sentences pursuant to a claim of a due process violation, Roberson v. State, 258 So.2d 257 (Fla. 1971), cert. denied, 409 U.S. 885, 93 S.Ct. 112, 34 L.Ed.2d 141 (1972), these considerations are not present here.
The effect of our decision in Huff I was to grant a new trial to appellant on all issues. As the United States Supreme Court has observed, at a new trial the parties may present new evidence or use different theories than were presented in the first trial. United States v. Shotwell Manufacturing Co., 355 U.S. 233, 243, 78 S.Ct. 245, 2 L.Ed.2d 234 (1957). We note here that the state in the instant case proceeded on a somewhat different theory than in the first trial. In attempting to prove a motive for these murders in Huff I, the state introduced evidence that appellant was to receive a financial bequest through his parents' wills. The state also presented evidence in Huff I that the appellant was in a financially desperate situation and suits by his creditors had been filed against him at the time of the murders. There was also an attempt by the state to show that appellant had forged his father's signature on a guarantee agreement and that appellant's father had learned of this forgery prior to the murders. It was the lack of evidence and the prosecutor's improper closing argument on this latter point that formed the basis for our reversal of conviction and sentence and remand for a new trial in Huff I.
In this trial, the state abandoned this "pecuniary gain" theory. No evidence supporting this theory was produced during the guilt phase, and the record is devoid of evidence of any attempt by the state to introduce such evidence during the penalty phase. We hold therefore that taking judicial notice of the entire Huff I proceeding was error. The evidence adduced at the new trial is all that may properly form the basis for the imposition of the two sentences of death.[7]
While our holding in State v. Carr, 336 So.2d 358 (Fla. 1976), allows a capital defendant to waive an advisory jury recommendation, it does not alleviate the trial court's obligation to consider all admissible evidence either the accused or the state wishes to present before imposing sentence. While it was error here for the court to refuse to accept evidence from the state during the penalty phase, the result we reach here obviates the need to remand for resentencing. In his supplemental findings, the trial judge below explicitly stated that his finding of pecuniary gain as an aggravating factor was determined from the Huff I proceedings. This aggravating factor therefore must be stricken. Unfortunately for appellant, the sole mitigating factor of no significant prior criminal history was based exclusively on evidence from the first trial and it too must be stricken.[8]
We are left, then, with the two aggravating factors that both murders were cold, calculated and premeditated without any pretense of moral or legal justification, and were especially heinous, atrocious or cruel.
*153 The finding that the murder of appellant's father was especially heinous, atrocious or cruel is supported by the evidence produced at the second trial. The testimony of the medical examiner showed that appellant's father had turned and was looking toward the back seat when the fatal shots were fired. He had placed his hand up in a futile attempt at self-defense, aware he was about to be murdered by his own son. The examiner's testimony even more strongly establishes the presence of this aggravating factor when applied to the murder of appellant's mother. The evidence proved that after witnessing her son kill his father, and knowing that she was about to be killed, Mrs. Huff received two bullet wounds to the head which caused excruciating pain but which did not render her unconscious. In what was characterized by the medical examiner as "frustration blows," because of Mrs. Huff's "refusal" to die at this point, appellant delivered eight or nine pulverizing blows to his mother's head with the murder weapon before firing the third and fatal shot.
Our review of the record shows that there is ample support for the trial court's finding both murders were committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. The murders were committed in a wooded and secluded area with which the appellant was personally familiar and where the appellant felt safe. Appellant knew well in advance that he would be riding with his parents in their car on the day of the murders. Appellant's preparation and heightened premeditated design were evidenced by the fact that appellant must have brought the murder weapon with him into his parents' car that day. See Davis v. State, 461 So.2d 67 (Fla. 1984), cert. denied, ___ U.S. ___, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985); Eutzy v. State, 458 So.2d 755 (Fla. 1984), cert. denied, 471 U.S. 1045, 105 S.Ct. 2062, 85 L.Ed.2d 336 (1985).
Appellant claims as error the trial court's use of appellant's "lack of remorse" in support of the court's finding the aggravating factor of heinous, atrocious or cruel for the murder of appellant's mother and to support the aggravating factor of cold, calculated and premeditated for the murder of appellant's father. In the sentencing order, the trial court directed its attention to appellant's frame of mind after the murders when the court found that appellant demonstrated a callous disregard for his crimes and did not show any evidence of mercy, remorse or concern for his victims although they were his natural parents.
In Pope v. State, 441 So.2d 1073 (Fla. 1983), we held that a reference to a lack of remorse to support a finding that the murder was especially heinous, atrocious or cruel, "is, at best, redundant and unnecessary." Id. at 1078. Our concern in Pope was that it is error to infer a lack of remorse from the exercise of constitutional rights (the defendant's not guilty plea and exercise of his due process right to a trial). Therefore, the reference to such a lack of remorse in the finding on count II that the murder was heinous, atrocious or cruel is superfluous.
The state argues that lack of remorse is relevant when considering whether a particular murder is cold, calculated and premeditated. While this argument does have some logical appeal, we find the dangers presented in Pope would still be present were we to adopt such a holding. Therefore we adhere to our holding in Pope that lack of remorse should be considered neither as an aggravating factor nor as an enhancement of an aggravating factor.
While the trial court's use of lack of remorse was error, it was used in support of findings which were already amply supported by the record, thus obviating the need to remand for resentencing. Stano v. State, 460 So.2d 890 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985).
The remainder of appellant's arguments are without merit.
We affirm both convictions of first-degree murder and both sentences of death.
It is so ordered.
*154 ADKINS, BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.
McDONALD, C.J., concurs in the conviction, but dissents from the sentence with an opinion.
McDONALD, Chief Justice, concurring in part and dissenting in part.
I concur with the majority opinion on the conviction issues. I dissent in the approval of the death sentence. There is no issue that at the time of these homicides Huff had no substantial history of criminal involvement. He is entitled to have this considered in determining whether death should be his punishment. This factor should be weighed against the valid aggravating circumstances by the trial judge. I personally do not believe that death is appropriate in this case.
NOTES
[1] Section 90.106, Florida Statutes (1983) provides:

A judge may not sum up the evidence or comment to the jury upon the weight of the evidence, the credibility of the witnesses, or the guilt of the accused.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] § 921.141(5)(f), Fla. Stat. (1983).
[4] § 921.141(5)(i), Fla. Stat. (1983).
[5] § 921.141(5)(h), Fla. Stat. (1983).
[6] § 921.141(6)(a), Fla. Stat. (1983).
[7] Even though appellant waived the sentencing phase, had the state attempted to introduce evidence of pecuniary gain during the guilt phase it would have been subject to challenge by the appellant.
[8] The record indicates that on the date of the murders, appellant was under felony prosecution in Sumter County for burglary and grand theft.