## STATE OF FLORIDA v NELFONT

Case Nos. 82-14920; 83-21261; 83-18561; 83-23209; 83-22800; 86-10139

Eleventh Judicial Circuit, Dade County

December 31, 1986

### APPEARANCES OF COUNSEL

**David Young,** Assistant State Attorney, for plaintiff.
**George Machin** for defendant.

### OPINION OF THE COURT

PHILIP BLOOM, Circuit Judge.

### *ORDER ON PROBATION VIOLATION*

The State seeks to violate probationer, Renel Nelfont, a/k/a Nelfort,

**29**

as a result of a substantive case, *The State of Florida vs. Renel Nelfont*, No. 86-10139, wherein probationer is charged with burglary, criminal mischief and petit theft.

## INTRODUCTION

The allegations underlying those charges are that a vandalism occurred at a used car lot. The night of the incident, a number of automobiles at the used car lot were destroyed. The destruction consisted of heavy blows to the cars, their bodies, their hoods, their windshields, and the slashing of the tops of the convertibles.

The vandalism took place at a time when the compound which was enclosed by a fence, was guarded by two Doberman pinschers inside the compound.

The probationer was the night operator of a gasoline station which was about fifty (50) yards away but contiguous to the used car lot. The probationer was suspected of the vandalism because he had been dissatisfied with a used automobile which he purchased several months earlier from that used car dealer and which he "returned" shortly before the incident.

The Court took judicial notice of the pertinent Court files and applicable Orders, and it was agreed by counsel that Mr. Nelfont (Nelfort) was the probationer.

The issue for this Court to determine is whether probationer Nelfont committed the substantive offenses and thereby violated conditions of his probation, namely, not to violate any law.

Provision (5) of the Probation Orders of which probationer Nelfont knew or should have known, states the following:

"You will live and remain at liberty without violating any law. A conviction in a court of law shall not be necessary in order for such a violation to constitute a violation of your probation."

The standard here is not proof beyond a reasonable doubt, but whether the conscience of the Court is satisfied that a condition of probation has been violated. *Brill v. State*, 32 So.2d 607 (1947); *Bernhardt v. State*, 288 SO.2d 490 (1974); *Randolph v. State*, 292 So.2d 374 (3DCA 1974); and *Kirk v. State*, 400 So.2d 540 (3DCA 1981).

## THE BACKGROUND

A relationship existed between the probationer and the victim who was the owner of the used car lot. The probationer purchased from the

victim, a used Honda Accord and became dissatisfied with it. The probationer did not make payments on the automobile for two or three months. The testimony varies as to when the probationer "returned" the automobile, but it is clear the return was made within a short time before the incident. At the time the Honda was returned, probationer told the victim that he (probationer) wanted the car repaired; and the victim told the probationer that he would not fix the car unless the monthly payments were brought current. At that point, the probationer left the car outside the compound of the used car lot, and turned over the keys to that car to the victim. That car remained outside the fenced compound at all times relevant.

## THE EVIDENCE

The evidence in this case consisted of the following:

1. The probationer worked as the night operator at the gas station contiguous to the used car lot. Probationer and victim knew each other since probationer purchased, for $630.00, the used car from the victim several months before the incident. Shortly prior to the incident, probationer drove that car over to the victim's lot and demanded repairs. Victim refused any repairs until probationer brought the car payments current. Probationer angrily gave victim the car and keys and abandoned that automobile outside the used car lot fence.

2. Two guard dogs ran loose at night inside the used car lot compound. The dogs would become hostile to unknown persons. Probationer frequently visited the compound during the day when the dogs were tied up, and probationer occasionally would feed the dogs through the fence.

3. The incident took place the night of February 20, 1986. That next morning at about 8:30 A.M., as victim was approaching the compound to unlock the fence as was his custom, the probationer came over from the gasoline station and asked the victim "what happened to the cars," at a time when the victim was still unaware of any incident or of any damage to the cars on his used car lot.

4. A "note" was affixed to the fence of the compound the night of the incident. The note was handwritten on a piece of spiral notepad paper to the effect that ". . . no body got money for nothing. This is just the beginning. You give me my money I will stop. . ."

5. Within a day or two after the incident, the victim and another witness saw a spiral notepad in another automobile owned by probationer, and subsequently they were able to obtain a blank page from that spiral notepad.

31

6. Samples of handwriting were requested of probationer. The expert police officer taking the standards or exemplars of probationer observed or concluded that probationer was attempting to disguise his handwriting in giving the exemplars.

7. Thereafter, another standard of probationer's writing was independently obtained and compared, and the expert police officer testified that the writing on the note was consistent with probationer's second standard, and that probationer could have authored the note.

8. The same expert compared the perforations on the spiral portion of the note with those on the blank page taken from the spiral notepad in the other automobile owned by probationer. The expert's testimony was that the perforations and the ink lines on the note and on the blank page were consistent with each other, and evidenced a common origin.

9. Reference is made to alleged evidence "found" in probationer's other automobile, an old Cadillac. This came about when victim, suspecting the probationer of having caused the vandalism, concocted a ruse in order to search probationer's Cadillac to see if any evidence could be found connecting probationer to the vandalism. That ruse consisted of victim producing a "neighbor" interested in purchasing that Cadillac and in test driving it. Probationer gave the keys to that Cadillac to the "prospective purchaser" and to the victim, and they test drove the Cadillac. Once away from the probationer, they stopped the Cadillac and searched it and its trunk. *It is undisputed* that probationer's Cadillac contained a spiral notepad, a mallet type hammer with metal on one side of the head and rubber on the other, and four hub cabs from the used Honda automobile "returned" by probationer to victim.

10. With respect to the hub caps, probationer admitted taking them off his Honda *after* he turned that car back to the victim. Probationer's explanation was that the car was *outside* the compound and subject to theft and that he (probationer) having paid $30-40 for the hub caps wanted them safe. For whatever significance, the Honda was wrecked in the vandalism more so than any of the other cars.

11. With respect to the spiral notepad, the victim said that when he observed the same in the Cadillac, the probationer immediately threw his jacket onto the rear seat to cover the notepad. However, probationer urges that if he wrote the note, he would not have left the notepad in the car then or at any other time.

12. Inside the trunk of probationer's Cadillac, victim discovered a hammer mallet. The mallet had a rounded head. The "impression" on

32

a smashed windshield which was admitted into evidence, was consistent with the blow which could have been struck with that mallet. Probationer testified he carried the mallet in his automobile to hammer on hub caps when he replaced tires.

13. Probationer said that on the night of the incident he heard the dogs barking while he (probationer) was at the contiguous gas station working, but he did not hear any other noises or smashing of metal or glass.

14. Shoe prints of a distinct nature were found immediately after the incident which led to and from the gasoline station where probationer worked, and the used car lot. Those shoe prints were found all around the inside of the compound, *on* the hoods and roofs of the vandalized cars and were also all over the ground of the gasoline station where probationer worked. The police officer investigating the incident "traced" the fresh, wavy ripple shoe prints to the gasoline station where probationer worked, but the officer did not have the sense to look at probationer's shoes at that time to see if the prints matched probationer's shoes.

15. The probationer testified in his own behalf. The Court observed probationer's demeanor at that time, and it did not appear that probationer was by his appearance untruthful. However, the Court was not satisfied with probationer's explanations of each item of circumstantial evidence.

## DISCUSSION OF FACTS AND LAW

This is a circumstantial case. There is no direct proof that probationer committed the burglary or criminal mischief of which he is accused in the substantive case. The Court is particularly mindful of the possibility of someone else casting suspicion on the probationer in this kind of case, although there is no such indication before the Court. Likewise, the quality, or lack of it, of police work is not at issue here. Circumstantial evidence is sufficient to convict whether it be of murder, or of any other substantive crime, or of a probation violation where that evidence in its totality meets the standard of proof necessary to find a violation. See *Huff v. State*, 495 So.2d 145 (Fla. 1986); Evidence and Witnesses, Sec. 141, 23 Fla. Jur. 2d 171-174.

Here, almost each item of circumstantial evidence standing alone may be insufficient to convince or persuade the Court of probationer's substantive violation of law. However, the totality of the circumstantial evidence is overwhelming that probationer committed the substantive crimes of which he is accused and therefore of violating his probation.

The Court, like a jury, is not required to throw away its life experiences and standards of reasonableness. Especially inexplicable are the spiral notepad and the note, the probationer's attempt at disguising his handwriting exemplars, the shoe prints on the cars themselves "matching" those at the gasoline station where probationer worked, the probationer's failure to hear the blows of metal and glass on the cars while hearing the barking of the dogs, and probationer's attempt at recovering $40 worth of hub caps and abandoning a $630 automobile. See *Russ v. State*, 313 So.2d 758 (Fla. 1975).

## FINDINGS

Based on the foregoing, it is hereupon ORDERED and AD-JUDGED as follows:

1. That Renel Nelfont (Nelfort) perpetrated the burglary and criminal mischief of which he is accused in his probation violation hearing.

2. That probationer Renel Nelfont (Nelfort) is hereby found to have violated provision (5) of his Probation Orders, namely by failing to live and remain at liberty without violating any law.

3. That the conscience of the Court is satisfied that probationer violated a condition of his probation.

4. The Court directs that the probationer and his attorney and all other concerned persons appear before this Court on Friday, January 9, 1987 at 9:30 A.M. for further proceedings, including sentencing.

DONE AND ORDERED in the Circuit Court, Criminal Division, Metropolitan Justice Building, this 31st day of December, 1986.