437 So.2d 716 (1983)
Leonard MAZZARA, Appellant,
v.
STATE of Florida, Appellee.
Nos. AP-108 & AP-109.
District Court of Appeal of Florida, First District.
August 26, 1983.
Rehearing Denied October 4, 1983.
*717 Michael P. Allen, Public Defender, P. Douglas Brinkmeyer, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Kathryn Sands, Asst. Atty. Gen., Tallahassee, for appellee.
LARRY G. SMITH, Judge.
Mazzara appeals his convictions for two counts of first degree murder and one count of conspiracy to commit murder. He raises as error the admission into evidence of a state witness' prior inconsistent statement and the introduction into evidence of allegedly gruesome, inflamatory and irrelevant photos. We affirm.
In the summer of 1980, appellant asked Rocco Marshall, whose band played at a Jacksonville Beach inn, to locate some "crazies" to kill Frank Ihlenfeld. Appellant wanted Ihlenfeld killed because of some bad debts connected with drug dealing. Rocco put appellant in touch with Barry Hoffman, who agreed to do the killing. James Robert White was contacted to assist Hoffman in the murders.
On September 7, 1980, Hoffman and White brutally beat and fatally stabbed Ihlenfeld and a female companion in their Jacksonville Beach motel room. With appellant's assistance, Hoffman fled from Jacksonville. White was arrested a few months later in South Florida. On October 12, 1981, Hoffman was apprehended by FBI agents in Michigan and placed under arrest.
After being advised of his rights, Hoffman declared that he wanted to give a statement to Florida authorities concerning his involvement in the murders. Officers Dorn and Maxwell of the Jacksonville Police Department flew to Michigan to take Hoffman's statement. After being advised of his rights again, Hoffman told Dorn and Maxwell in the presence of FBI agent Lukepas that appellant paid him $5,000.00 to commit the murders. In his statement, Hoffman gave the officers the complete details of the killings and everyone's involvement in them. Hoffman was returned to Florida where he pled guilty to two counts of first degree murder in return for the State's promise not to seek the death penalty. Apparently, as part of his plea bargain, Hoffman agreed to testify against appellant.
Notwithstanding his prior representations to the contrary, when Hoffman was called at appellant's trial to testify, he denied killing anyone and denied any involvement with appellant. Hoffman admitted that he had given a deposition in which he testified that he had conspired with appellant to kill the victims, but at the trial he maintained his innocence and explained that he pled guilty and agreed to testify against appellant to avoid the death penalty. Immediately thereafter, the State called FBI agent *718 Lukepas to the stand. Lukepas testified that he was present when officers Dorn and Maxwell interviewed Hoffman in Michigan and that Hoffman, with full knowledge of his constitutional rights, made a statement to Dorn and Maxwell. Lukepas elaborated that Hoffman told him and the officers that appellant wanted Ihlenfeld killed, that Hoffman and White killed Ihlenfeld and his female companion, and that appellant took Hoffman to the airport and paid him money for doing the killings. Next, the state called officer Dorn, who also related Hoffman's Michigan statement to the jury. Appellant objected to this testimony on the grounds that it constituted impermissible hearsay. The trial court overruled the objection on the grounds that Hoffman was an adverse witness and could be impeached by evidence of his prior inconsistent Michigan statement as set forth in Section 90.608(2), Florida Statutes (1981).
Appellant contends that since his Michigan statement was not given under oath in some court proceeding, the provisions of Section 90.801(2)(a) do not apply, and the testimony concerning the statement should have been excluded under the rule that a prior inconsistent statement may not be admitted as substantive evidence, but only for impeachment. Smith v. State, 379 So.2d 996 (Fla. 5th DCA 1980); Delanie v. State, 362 So.2d 689 (Fla. 2nd DCA 1978); Perry v. State, 356 So.2d 342 (Fla. 1st DCA 1978); Pitts v. State, 333 So.2d 109 (Fla. 1st DCA 1976); and Rankin v. State, 143 So.2d 193 (Fla. 1962).
Admittedly, Hoffman's Michigan statement was not admissible under Section 90.801(2)(a) since it was not given under oath. Compare Webb v. State, 426 So.2d 1033 (Fla. 5th DCA 1983). However, the use of the statement was proper under Section 90.608(2) as impeachment of Hoffman's in-court testimony, which differed substantially from his prior Michigan statement on relevant issues.
Although Section 90.608(2) no longer requires the prosecution to be surprised when a witness proves adverse, it is clear from the record that everyone involved in this trial proceeding was surprised by Hoffman's turncoat performance on the witness stand. More importantly, Hoffman's in-court testimony, exculpating appellant in the eyes of the jury, was extremely prejudicial to the state's case. Under the circumstances, the state was entitled to eliminate from the jury's mind the prejudicial effect of Hoffman's adverse testimony by proving that Hoffman made a statement on another occasion that was inconsistent with his testimony in court. Adams v. State, 34 Fla. 185, 15 So. 905 (1894).
The authorities cited by appellant do proscribe the use of a prior inconsistent statement as substantive evidence. We acknowledge that the testimony as to Hoffman's Michigan statement supplied positive evidence of appellant's guilt for the jury's consideration. If there were no other evidence in this record establishing the facts contained in the Michigan statement, then we would be compelled to reverse. However, through the testimony of Rocco Marshall, the state proved the elements of each offense. Hoffman's Michigan statement merely corroborated the facts already adduced. This case is not governed by the rule which prohibits the prosecutor from introducing an inconsistent statement, under the guise of impeachment, for the primary purpose of placing before the jury substantive evidence not otherwise established by the facts already introduced in evidence. Compare Smith, supra; Delanie, supra; Pitts, supra; and Rankin, supra.
Finally, the four photographs introduced at trial demonstrated the gangland slaying of Ihlenfeld and his companion and as such were relevant. See, Alford v. State, 307 So.2d 433 (Fla. 1975), cert. den. 428 U.S. 912, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). "Gruesome and gory photographs may and should be admitted if they properly depict the factual conditions relating to the crime and if they are relevant in that they aid the court and jury in finding the truth." Swan v. State, 322 So.2d 485, 487 (Fla. 1975). These photographs were not so inflammatory as to create an undue prejudice in the mind of the jury. Two of the photographs *719 identify the crime scene and the positions of the victims. The other two depict the appearance of each victim's body. The photographs, which were not duplicitous, were admissible.
AFFIRMED.
JOANOS, J., concurs.
NIMMONS, J., concurs specially with an opinion.
NIMMONS, Judge, specially concurring.
I concur in Judge Smith's opinion. I do so with somewhat different emphasis. Prior inconsistent statements of witnesses who prove adverse within the meaning of Section 90.608 are admissible under that section for the purpose of impeachment of such witness but not as substantive evidence.[1] When evidence admissible for one purpose, but inadmissible for another, is admitted, the court, upon request, is required to instruct the jury as to the limited purpose for which the evidence is received. Section 90.107, Florida Statutes (1981). This principle was recognized and applied before the adoption of the Florida Evidence Code to prior inconsistent statements admissible, as here, for impeachment purposes, but inadmissible as substantive evidence. Johnson v. State, 249 So.2d 470 (Fla. 3rd DCA 1971); Walter v. State, 272 So.2d 180 (Fla. 3rd DCA 1973). It is apparent, however, from those cases and from the provisions of Section 90.107 that a party must request a limiting instruction in order to be entitled to assert error by reason of the court's failure to so instruct. Appellant made no request of the trial court for such a limiting instruction and since the testimony was admissible as previously indicated, no error was committed by the trial court in allowing the same.
Even if the trial court had denied a request for a limiting instruction, I am of the view that such error would be harmless not simply because there was, as the court's opinion notes, substantial evidence of guilt apart from such statements, but for the reason that there was testimony that he had made similar statements under oath in his subsequent deposition in the instant case. Evidence of such sworn statements is not regarded as hearsay and is admissible as substantive evidence under Section 90.801(2)(a). See Webb v. State, 426 So.2d 1033 (Fla. 5th DCA 1983); State v. Moore, 424 So.2d 920 (Fla. 4th DCA 1983). Thus, any error in allowing testimony regarding Hoffman's prior unsworn inconsistent statements without an appropriate limiting jury instruction would be harmless.
NOTES
[1] Appellant has not raised on appeal any question as to whether Hoffman met the test of "adverseness" under Section 90.608(2). Appellant apparently concedes that Hoffman did not simply fail to give the testimony expected of him by the State but instead gave testimony which was prejudicial to the State. See Johnson v. State, 178 So.2d 724, 728 (Fla. 2nd DCA 1965). Hernandez v. State, 156 Fla. 356, 22 So.2d 781 (Fla. 1945). Compare Tipton v. State, 402 So.2d 479 (Fla. 1st DCA 1981) (Smith, R., specially concurring).