463 So.2d 196 (1985)
Robert Dale HENDERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 63094.
Supreme Court of Florida.
January 10, 1985.
Rehearing Denied February 28, 1985.
*198 James B. Gibson, Public Defender, and Brynn Newton, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Daytona Beach, for appellee.
BOYD, Chief Justice.
This cause is before the Court on appeal of judgments of conviction on three counts of first-degree murder. Appellant Robert Dale Henderson was sentenced to death for each of the three capital offenses. Therefore, this Court has jurisdiction of the appeal. Art. V, § 3(b)(1), Fla. Const. Upon reviewing the record and considering appellant's arguments on appeal, we find no reversible error and affirm the convictions and sentences of death.
Appellant's murder convictions are based upon the deaths of three hitchhikers in Hernando County, Florida. Henderson turned himself in to the sheriff's office in Charlotte County, Florida, on February 6, 1982. He confessed to murdering three hitchhikers in northern Florida and to several other unrelated murders. He then requested counsel and signed a "Notice of Defendant's Invocation of the Right to Counsel."
On February 10, 1982, two Putnam County sheriff's deputies took custody of Henderson for an unrelated murder and were transporting him to Putnam County by automobile when Henderson volunteered to show them where the bodies of the three hitchhikers were. They advised him of his rights, after which he signed a waiver of rights form and led them to the field where the bodies were discovered.
The following June, a Hernando County detective took custody of Henderson in Putnam County for the purpose of transporting him to Hernando County to be tried for the murders of the three hitchhikers. At first Henderson said he did not want to talk because he had already given his statement to the other deputies. Later during the ride Henderson changed his mind and, after executing a written waiver, talked about the details of the murders.
Henderson filed two pretrial motions to suppress the statements he made to the Putnam County deputies and to the Hernando County detective. The motions alleged that the statements were elicited from him after he had invoked his right to remain silent by requesting an attorney. After holding an evidentiary hearing, the trial court denied the motions.
At trial a deputy sheriff of Charlotte County testified that he was responding to a call reporting an automobile burglary when Henderson motioned to him. When the officer approached, Henderson said he wanted to give himself up for murder and that he was wanted in several states. The officer testified that Henderson surrendered a bag containing a .22 caliber revolver which Henderson said was the murder weapon. After the officer arrested Henderson and advised him of his constitutional *199 rights, Henderson said that he had killed three hitchhikers in north Florida.
Another Charlotte County deputy sheriff testified that he interviewed Henderson after advising him of his constitutional rights. According to this witness, Henderson said that he shot all three hitchhikers in the head and dumped their bodies in a remote area south of Perry, Florida.
One of the Putnam County sheriff's deputies testified about Henderson's showing him the location of the bodies. The Hernando County detective testified that when he was transferring Henderson from Putnam to Hernando County, Henderson agreed to talk and gave details of the murders. A transcript of Henderson's confession was read to the jury. According to the transcript, Henderson said he picked up the hitchhikers, two male and one female, near Panama City and became concerned when he heard two of them talking about killing someone to get some money. Henderson was quoted as saying that he bound and gagged the three hitchhikers and shot them each in the head with a .22 caliber revolver.
There was substantial medical and scientific testimony corroborating Henderson's confessions. The medical examiner testified that the victims, two male and one female, had each died of a gunshot wound to the head. A firearms expert testified that the bullet fragments found in the victims had the same rifling characteristics as did bullets shot from the .22 caliber revolver found in Henderson's possession when he was arrested. Crime scene investigators testified that the victims' bodies were found bound and gagged with tape in the manner described in Henderson's statements.
The defense rested without presenting any evidence. The jury found Henderson guilty of three counts of first-degree murder.
At the penalty phase of the trial, the state presented evidence of Henderson's prior convictions for two counts of first-degree murder. The state also called the Hernando County detective who testified that Henderson told him he had no regrets and that if he had his life to live over again, he would not change anything. The defense presented evidence that Henderson was abused as a child and that he showed the police the location of the victims' bodies so they could be buried.
The jury recommended that Henderson be sentenced to death. The trial judge adopted the jury's recommendation and found as aggravating circumstances that Henderson had previously been convicted of a violent felony; that the murders were especially heinous, atrocious, or cruel; and that they were committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. The judge found there was no evidence of any statutory mitigating circumstances and that the nonstatutory mitigating circumstances presented were of little if any weight.
Henderson's first point on appeal claims error in the denial of his pretrial motions to suppress the statements he made to the Putnam County deputy and the Hernando County detective. Henderson claims that these statements were improperly elicited from him after he had requested the assistance of counsel. It is true that when an accused asks to see counsel, interrogation must cease. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). However, there is nothing to prevent an accused from changing his mind and volunteering further information. "The stricter standard for showing that an accused has knowingly and intelligently waived a previous request for counsel is met when the accused voluntarily executes a written waiver." Cannady v. State, 427 So.2d 723, 729 (Fla. 1983). In this case Henderson signed written waivers before making the statements in question. We therefore conclude that there is sufficient evidence to support the finding that he knowingly and intelligently waived his right to have counsel present when making these statements.
*200 Next Henderson argues that the trial judge erred in denying in part his motion in limine to exclude references to unrelated crimes committed in other jurisdictions. In response to Henderson's motion, the state averred that the only evidence of collateral crimes it anticipated introducing was the statement Henderson made to the arresting officer that he was turning himself in for murder and that he was wanted in several states. The trial court ruled that this statement was admissible.
We agree with Henderson's contention that the testimony concerning his admission to being wanted in other states bore no relevance to any material fact at issue in this case. Hence his motion to exclude all references to crimes committed in other jurisdictions should have been granted. However, we find that the error was harmless and could not possibly have affected the outcome of the case. The amount of evidence against Henderson is simply overwhelming. There were at least four confessions to four different police officers. There was also substantial circumstantial evidence linking him to the crime and corroborating his confessions. Given the magnitude of this evidence, we do not believe that the jury was unduly or improperly influenced by the evidence that Henderson admitted to being wanted in other states.
Next Henderson argues that the trial court erred by allowing into evidence gruesome photographs which he claims were irrelevant and repetitive. We find that the photographs, which were of the victims' partially decomposed bodies, were relevant. Persons accused of crimes can generally expect that any relevant evidence against them will be presented in court. The test of admissibility is relevancy. Adams v. State, 412 So.2d 850 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982); Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). Those whose work products are murdered human beings should expect to be confronted by photographs of their accomplishments. The photographs were relevant to show the location of the victims' bodies, the amount of time that had passed from when the victims were murdered to when their bodies were found, and the manner in which they were clothed, bound and gagged. It is not to be presumed that gruesome photographs will so inflame the jury that they will find the accused guilty in the absence of evidence of guilt. Rather, we presume that jurors are guided by logic and thus are aware that pictures of the murdered victims do not alone prove the guilt of the accused. We therefore conclude there was no error in allowing the photographs into evidence. Aldridge v. State, 351 So.2d 942 (Fla. 1977), cert. denied, 439 U.S. 882, 99 S.Ct. 220, 58 L.Ed.2d 194 (1978); Jackson v. State, 359 So.2d 1190 (Fla. 1978), cert. denied, 439 U.S. 1102, 99 S.Ct. 881, 59 L.Ed.2d 63 (1979); Swan v. State, 322 So.2d 485 (Fla. 1975).
Henderson argues that the trial judge erred when, in advising the jury of the probable duration of the trial, he suggested that there would be a second phase of the trial concerned with sentencing. Because a sentencing phase would only be required upon conviction of a capital offense, appellant argues that the statement indicated to the jury that the judge thought appellant would be found guilty of at least one of the charged first-degree murder counts. Upon the raising of an objection by the defense, the judge gave a curative instruction indicating that he only meant to estimate the maximum period of time to be set aside for the trial and had not made any judgment about what the evidence was likely to show. Defense counsel moved for a mistrial and now argues that the denial of the motion was reversible error. We find the argument to be completely without merit.
Henderson also argues that several of the provisions of section 40.013, Florida Statutes (1981), pertaining to permissible excusals from jury service, operated to deny him the right to be tried by a jury drawn from a venire representing a "cross-section" of the community. See Taylor v. *201 Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). He relies on Alachua County Court Executive v. Anthony, 418 So.2d 264 (Fla. 1982). That decision held that the exemption for mothers with small children was faulty on equal protection grounds for not treating similarly situated fathers the same way. The sixth amendment was not involved in that case and we do not read it as announcing any right of defendants that would support appellant's argument here. We find appellant's challenge to be without merit. Hitchcock v. State, 413 So.2d 741 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982); McArthur v. State, 351 So.2d 972 (Fla. 1977).
With respect to his sentence, Henderson argues that the trial judge erred in finding that the murders were especially heinous, atrocious or cruel. Henderson claims that the murders were not heinous, atrocious, or cruel because the victims died instantaneously from single gunshots to their heads. This argument overlooks the fact that the victims were previously bound and gagged. They could see what was happening and obviously experienced extreme fear and panic while anticipating their fate. We therefore conclude that this aggravating circumstance applies. White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, ___ U.S. ___, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); Knight v. State, 338 So.2d 201 (Fla. 1976).
Appellant also argues that the court erred in finding that the murders were committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. We hold that there was sufficient evidence to support the trial judge's finding of this factor. Henderson rendered the victims helpless by binding their ankles with tape. He then coldly proceeded to shoot them one by one execution-style.
Finally Henderson argues that Florida's death penalty law is unconstitutional. However, all his arguments have previously been refuted by this Court on a number of occasions and therefore do not merit any further discussion.
In conclusion, the properly established aggravating circumstances are:
1. Appellant had previously been convicted of two counts of first-degree murder.
2. The murders were all heinous, atrocious, and cruel.
3. The murders were all committed in a cold, calculated, and premeditated manner without pretense of moral or legal justification.
The trial court properly found that there were no mitigating circumstances sufficient to outweigh the aggravating circumstances found.
We therefore affirm the convictions on three counts of first-degree murder. Finding that the three sentences of death are appropriate under the law established in similar cases, we affirm them also.
It is so ordered.
ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.