No. 84–6681. HENDERSON *v.* FLORIDA. Sup. Ct. Fla. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Petitioner, after contacting police and admitting involvement in a series of murders, unambiguously asserted his right to counsel and his desire to have no discussions with the police concerning his case outside the presence of counsel. The legal import of this assertion, made while in police custody, is clear; our cases establish a " 'bright-line rule' that *all* questioning must cease after an accused requests counsel." *Smith* v. *Illinois*, 469 U. S. 91, 98 (1984); see also *Edwards* v. *Arizona*, 451 U. S. 477 (1981); *Miranda* v. *Arizona*, 384 U. S. 436, 474 (1966). The reason for this rule is also clear from our cases, for "[i]n the absence of such a bright-line prohibition, the authorities through 'badger[ing]' or 'overreaching'—explicit or subtle, deliberate or unintentional— might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance." *Smith* v. *Illinois*, *supra*, at 98. This "bright-line rule" is thus an essential "protective devic[e] . . . employed to dispel the compulsion inherent in custodial surroundings" and to thereby assure that any statements by an accused are the product of free will rather than subtle coercion. *Miranda* v. *Arizona*, *supra*, at 458.

I

In this case, petitioner contends that police violated this "bright-line rule" and through custodial interrogation did persuade him to incriminate himself further notwithstanding his earlier request for counsel's assistance during questioning; yet the Florida Supreme Court sustained the admission of the subsequently obtained evidence simply on the fact that petitioner was eventually

persuaded and signed a waiver form. 463 So. 2d 196 (1985). Such a rationale cannot be made to conform to this Court's precedents, which establish that *as a precondition to a finding of waiver* a court must find that the accused, rather than the police, reopened dialogue about the subject matter of the investigation. See *Edwards* v. *Arizona, supra,* at 485; *Oregon* v. *Bradshaw,* 462 U. S. 1039, 1044 (1983) (plurality opinion); *id.,* at 1054 (MARSHALL, J., dissenting).

This Court has not always found it easy to define exactly when and by whom dialogue was reopened, *ibid.,* and perhaps the instant case can be explained as resulting from these difficulties. Here, however, the State argues that petitioner "initiated" further dialogue by minimally responding to an unrequested police explanation of the accused's fate and by "conveying" a willingness to talk through nonverbal expressions and unrelated "subtle comments." The valuable right to be free from police interrogations in the absence of counsel cannot be made to be so fragile as to crumble under the weight of elicited and subjective inconsequentials. I would grant the petition to make clear that waiver of this right is not so lightly to be assumed.

## II

A few days after his assertion of the right to counsel and his consultation with an attorney, petitioner was transported from one jail to another in connection with an unrelated criminal investigation. The drive lasted almost five hours, and the police officers accompanying petitioner were informed that he had asserted his right to counsel and had been advised by his counsel not to talk with the police. The police officers had nevertheless equipped themselves for the trip by taking along specially prepared forms by which petitioner could waive his right to be free from police interrogation in spite of his previous assertion of that right. In particular, the form declared that the signatory desired to make a statement to the police, that he did not want a lawyer, and that he was aware of his "constitutional rights to disregard the instruction of [his] attorney and to speak with the officers" transporting him. Response to Pet. for Cert. A–24.

During the course of the 5-hour drive, the police engaged in extended "casual conversation" with petitioner. Although the police officers asserted that none of this conversation concerned any as-

pect of the case, they also asserted that petitioner's general manner as well as various "subtle comments" conveyed to them that "his conscience was bothering him," *id.*, at A–21, and that "he wanted to discuss the [criminal] matter." *Id.*, at A–20. Near the end of the 5-hour drive, the police stopped the car and one of the officers got out to make a phone call. The officer who remained with the accused perceived that petitioner "acted like he was interested in what we were doing," *id.*, at A–60, so he explained that they were "calling the chief of detectives just to tell him that we were here." *Ibid.* When the accused "wanted to know what we would do then," the officer explained that they would probably place petitioner in jail. According to the officer, petitioner then responded with a "look on his face" that made clear his willingness to talk with the police. As the officer put it, "[i]t's hard to describe an expression," but he could see that petitioner was thinking: "You've got to be kidding. . . . Here I am. I know all these things, and all you're going to do is take me to jail." *Id.*, at A–61. The officer then directly asked petitioner if there was anything he would like to tell the police. When petitioner expressed a tentative willingness to give information about the location of his victims' bodies, the police confronted him with the previously prepared waiver forms, which he signed.

### III

It is clear that the direct question by the police officer easily meets this Court's definition of interrogation. See *Rhode Island v. Innis*, 446 U. S. 291, 300–301 (1980). And the fact of the arrest, even without the 5-hour drive, makes the context clearly custodial. Thus the issue is whether petitioner "initiated" a dialogue with the police concerning the subject matter of the investigation. By the police officer's own testimony, the only actual speech by petitioner that directly related to his case was the casual question of what would happen after the officer telephoned the "chief of detectives." Although four Members of this Court found a similar statement to be "initiation" of dialogue in *Bradshaw, supra,* there the comment was at least unrelated to any prior police-initiated conversation. Here, in contrast, the comment was a response to the police officer's unsolicited partial explanation of the police's intentions. If petitioner's question is deemed a general inquiry regarding the investigation, then the police officer's comment that elicited it must

have been a similar reinitiation of dialogue. It is thus not surprising that the police insist that petitioner made clear his desire to talk through repeated, though "subtle," hints. But surely, the right to counsel cannot turn on a police officer's subjective evaluations of what must stand behind an accused's facial expressions, nervous behavior, and unrelated subtle comments made in casual conversation. If it were otherwise, the right would clearly be meaningless.

I dissent from the Court's denial of certiorari.