522 So.2d 817 (1988)
Johnny Bell PERRY, Appellant,
v.
STATE of Florida, Appellee.
No. 68482.
Supreme Court of Florida.
March 10, 1988.
Rehearing Denied April 28, 1988.
*819 Lane S. Abraham, of the Law Offices of Lane S. Abraham, Miami, for appellant.
Robert A. Butterworth, Atty. Gen., Michael J. Neimand, Bureau Chief and Mark J. Berkowitz, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Johnny Bell Perry appeals his conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm the conviction. Finding, however, that the jury could have had a reasonable basis for its recommendation of life imprisonment, we vacate the death sentence and remand for imposition of a sentence of life imprisonment with no possibility of parole for twenty-five years.
On March 13, 1985, the body of Kathryn Miller was found by her husband in a hallway of their home. Mrs. Miller had been stabbed repeatedly and had suffered blows to her head; the autopsy revealed that she died by strangulation. Witnesses reported having seen the car of Johnny Perry, a former neighbor, in the Miller driveway at the approximate time of the murder, and police soon identified Perry's fingerprints inside the home. Several days after the murder, Perry went to the police station at the request of detectives. Under questioning, but before being given Miranda warnings, Perry confessed that he had killed Mrs. Miller during a robbery attempt. Shortly thereafter detectives read Perry his rights and he repeated his confession. He was charged by indictment with first-degree murder, armed robbery and armed burglary. A jury found Perry guilty of the murder and robbery; he was acquitted of burglary. After hearing evidence presented in the penalty phase, the jury returned a recommendation that Perry be sentenced to life imprisonment. Finding no mitigating circumstances and five aggravating circumstances, the trial court overrode the jury recommendation and sentenced Johnny Perry to death.
Perry first raises three points relating to the guilt phase of his trial. Most worthy of discussion is the defense claim that because Perry initially confessed without benefit of Miranda warnings, subsequent statements made after he was given proper warnings were tainted and should have been suppressed. We disagree.
There is nothing in the record to indicate that Perry's initial remarks to police were involuntary. He voluntarily went to the police station. His statements to the detectives were not made under duress, nor under prolonged or unreasonable interrogation. He was neither threatened nor coerced nor promised anything in return for his statements. Although a previous voluntary disclosure may give a certain psychological impetus for confession not otherwise present, we decline to find that this rises to the level of state compulsion. The failure to give proper warnings makes the initial statements inadmissible, not because they were compelled, but as an indication that there may not have been a knowing and intelligent waiver of the right against self-incrimination. This defect is cured by subsequent warnings. We agree with the United States Supreme Court finding in Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), that "[w]hen neither the initial nor the subsequent admission is coerced, little justification exists for permitting the highly probative evidence of a voluntary confession to be irretrievably lost to the factfinder." 470 U.S. at 312, 105 S.Ct. at 1294.
Perry contends that he was denied a fair trial because a juror was heard to comment on his veracity during his testimony. However, there was no evidence of juror misconduct and defense counsel made it clear that he did not wish the court to give a special instruction on this subject.
Perry also complains that the trial court failed to give a requested instruction on third-degree murder. Even if there was evidence to support the instruction, any error in failing to give it was harmless because the court did instruct the jury on *820 second-degree murder which was only one step removed from the crime of which Perry was convicted. State v. Abreau, 363 So.2d 1063 (Fla. 1978).
Perry appeals the trial judge's finding of five aggravating and no mitigating circumstances. Noting that the record reflected Perry had demanded gold from Mrs. Miller prior to killing her and had taken her purse from the murder scene, the trial court used the jury's contemporaneous conviction for armed robbery to find as a statutory aggravating factor that Perry had previously been convicted of a felony involving use or threat of violence. Use of such contemporaneous convictions in aggravation, however, was recently rejected by this Court in Wasko v. State, 505 So.2d 1314 (Fla. 1987).
In Wasko, the defendant was convicted of armed robbery, attempted sexual battery, and first-degree murder. The trial court there, as here, used the contemporaneous felonies in aggravation. On review, this Court distinguished contemporaneous felony convictions based on acts against the murder victim from contemporaneous convictions resulting from violence against multiple victims or in separate incidents which are combined in one trial. The Court then held it improper to aggravate for a prior conviction of a violent felony when the underlying felony is part of the single criminal episode against the single victim of the murder for which the defendant is being sentenced. We believe this is the proper interpretation, and to the extent it is in conflict with Hardwick v. State, 461 So.2d 79 (Fla. 1984), cert. denied, 471 U.S. 1120, 105 S.Ct. 2369, 86 L.Ed.2d 267 (1985), we recede from that decision.
The trial court also found that the sole purpose behind the killing of Kathryn Miller was to eliminate the only witness to the defendant's armed robbery and listed as an aggravating factor that the murder was committed to avoid or prevent lawful arrest. In applying this factor where the victim is not a law enforcement officer, we have required that there be strong proof of the defendant's motive, Riley v. State, 366 So.2d 19 (Fla. 1978), and that it be clearly shown that the dominant or only motive for the murder was the elimination of the-witness. Bates v. State, 465 So.2d 490 (Fla. 1985); Oats v. State, 446 So.2d 90 (Fla. 1984). We have also held that the mere fact that the victim knew and could have identified his assailant is insufficient to prove intent to kill to avoid lawful arrest. Caruthers v. State, 465 So.2d 496 (Fla. 1985); Rembert v. State, 445 So.2d 337 (Fla. 1984); Riley. Here, there was no direct evidence of motive. There was some evidence that the defendant may have "panicked" and "blacked out" during the murder. We, therefore, find insufficient evidence in the record to support a finding that Mrs. Miller was killed to avoid lawful arrest.
We also agree with Perry that the trial court improperly found in aggravation that the murder was of a cold, calculated and premeditated nature. To sustain such a finding, the facts must show premeditation beyond that normally sufficient to prove premeditated murder. We have held that "[t]he premeditation of a felony cannot be transferred to a murder which occurs in the course of that felony for purposes of this aggravating factor" nor "can the fact that it takes the victim a matter of minutes to die once the process begins support this finding." Hardwick, 461 So.2d at 81. This aggravating factor is frequently and appropriately applied in cases of contract murder or execution style killings and "emphasizes cold calculation before the murder itself." Id. See Henderson v. State, 463 So.2d 196 (Fla.), cert. denied, 473 U.S. 916, 105 S.Ct. 3542, 87 L.Ed.2d 665 (1985); Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). The record does not support a finding of such heightened premeditation.
While the contemporaneous conviction for armed robbery was improperly used to aggravate as a previous conviction for violent crime, it unquestionably warranted the finding in aggravation that the murder was committed during commission of a robbery.
The trial court also found as an aggravating circumstance that this killing *821 was especially heinous, atrocious and cruel. The evidence reflects that Johnny Perry tried and tried again to kill Kathryn Miller. She was brutally beaten in the head and face. She was choked and repeatedly stabbed in the chest and breasts as she attempted to ward off the knife. She died of strangulation associated with stab wounds, comparable, in the medical examiner's testimony, to drowning in her own blood. Evidence that a victim was severely beaten while warding off blows before being fatally shot has been held sufficient to support a finding that the murder was especially heinous, atrocious and cruel. Wilson v. State, 493 So.2d 1019 (Fla. 1986). We note also that this vicious attack was within the supposed safety of Mrs. Miller's own home, a factor we have previously held adds to the atrocity of the crime. Troedel v. State, 462 So.2d 392, 398 (Fla. 1984); Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982). Although there are undoubtedly killings more outrageous, wicked and vile than that shown here, we cannot say with certainty that this is not the kind of killing which the legislature intended to be punished by death, and we leave the trial court's determination undisturbed. This leaves us with two valid aggravating circumstances.
We turn next to Perry's contention that the trial court erred in refusing to find as a statutory mitigating circumstance that he had no significant history of criminal activity. "Finding or not finding a specific mitigating circumstance applicable is within the trial court's domain, and reversal is not warranted simply because an appellant draws a different conclusion." Stano v. State, 460 So.2d 890, 894 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985); Smith v. State, 407 So.2d 894, 901 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982). The record shows evidence that the defendant had violently attacked a young woman several weeks before the murder, and Perry did not rebut the testimony, though he certainly could have taken the stand to do so. Although the charge was reduced to a misdemeanor, we believe the facts giving rise to the conviction were properly considered as pertaining to the defendant's prior criminal history. Thus, we find no error in the court's rejection of lack of prior criminal record as a mitigating circumstance.
We agree with the trial court that the evidence presented does not rise to the level of statutory mitigating circumstances. There was, however, substantial nonstatutory mitigating evidence presented by the defense. Several witnesses who had known Johnny Perry over a long period of time testified that he was kind, good to his family and helpful around the home and that he had never shown any signs of violence. An attorney testified that when he first met him in 1982, Perry was a highly motivated and ambitious young man. He said that thereafter Perry's life had gone downhill and that by 1985, Perry viewed himself as a total failure. The jury knew that Perry was unemployed, that his wife was pregnant and that the couple was trying to find a place to live. There was testimony that Perry had fully cooperated with authorities in another criminal case in which he was a witness. The jury may have considered the evidence of Perry's character, his psychological stress and his relatively young age of twenty-one to counterbalance the aggravating factors. Thus, it appears that the jury had a reasonable basis for recommending life imprisonment. We cannot say that no reasonable person could differ with a sentence of death, as we must to uphold an override of a jury recommendation of life imprisonment. Tedder v. State, 322 So.2d 908 (Fla. 1975).
Therefore, we affirm the convictions of Johnny Bell Perry but vacate the sentence of death and remand to the trial court for imposition of a sentence of life imprisonment without possibility of parole for twenty-five years.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.